**Ulises Marino CURBELO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. 95–2876–Civ, 88–0765–CR.

United States District Court, S.D. Florida.

Feb. 5, 1998.

Ulises Marino Curbelo, Coleman, FL, pro se.

Christopher Clark, Asst. U.S. Atty., U.S. Attorney's Office, Miami, FL, for Respondent.

*ORDER ADOPTING REPORT AND REC-OMMENDATION AND DENYING PE-TITIONER'S § 2255 MOTION.*

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court on the Report and Recommendation issued by the Magistrate Judge on September 23, 1996. Having reviewed the Report, the pertinent portions of the file, and the pertinent legislative history, the Court has concluded that the Magistrate Judge is correct in her recommendation that the Petitioner's motion be denied. The following discussion is provided in order to clarify a point of Petitioner's argument which was largely overlooked in the Respondent's analysis and was treated only summarily in the Magistrate Judge's Report. As it appears that the issue has generated confusion previously, *see, e.g.,* attachments to Petitioner's submissions which include a Response filed by the United States in an unrelated matter, the Court finds it appropriate to address the matter in some detail.

Subsequent to the entry of Petitioner's guilty plea in March 1994 to one count of conspiracy to import cocaine, the United States filed a motion pursuant to § 5k1.1 of the United States Sentencing Guidelines, suggesting a reduction of the pertinent offense level and recommending a sentence of 120 months—to which Petitioner did not object. Petitioner now claims ineffective assistance of counsel for, *inter alia,* counsel's failure to object to the imposition of a non-parolable sentence. As should be clear from the discussion below, Petitioner's claim must fail because the Sentencing Guidelines do not provide for parole.

Petitioner pleaded guilty to engaging in a conspiracy which took place in September 1988. At the time of sentencing in July 1994, the Court stated that "I am going to depart from the guidelines and commit the defendant to the custody of the Bureau of Prisons to be imprisoned for a term of 10 years [later stated as 120 months]. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 5 years as to Count I." *Transcript of Sentencing,* July 27, 1994, p. 4. The Judgment, signed July 28, 1994, is consistent with the Court's statement. (At no point during the sentencing did the Court refer to parole, and the Judgment is silent as to parole eligibility.) [1]

Petitioner argues that he was entitled to parole, despite having received a Guidelines sentence, because the applicable statute, 21 U.S.C. § 963, was unclear as to parole eligibility. Citing the Supreme Court's decision in *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), Petitioner argues that the Court lacked authority to impose the condition of parole ineligibility because 21 U.S.C. § 963 did not expressly provide for such condition. In *Bifulco,* the Supreme Court determined that the imposi-

---

1. There are two aspects to Petitioner's sentence: the period of incarceration and the period of post-incarceration supervision. It is abundantly clear that 18 U.S.C. § 3583(a) provides the Court with the discretion to impose a term of supervised release. *United States v. Jordan,* 915 F.2d 622, 631 (11th Cir.1990). Thus, the post-incarceration aspect of Petitioner's sentence is imper-vious to attack. As to the period of incarceration, Petitioner challenges only one element: the possibility of an early release date through parole eligibility. The length of the sentence, 120 months, is not challenged. Even if a challenge had been raised, the sentence was within the Court's discretion under the Guidelines and was not imposed as a minimum mandatory sentence.

tion of a special parole term for conspiracy offenses was not authorized, even though the conspiracy statute referred to the penalties available as to the underlying substantive offense and that offense permitted imposition of a term of special parole. The language in the conspiracy statute at issue referred to a sentence of "imprisonment or fine or both *which may not exceed* the maximum punishment prescribed [for the object offense]". The Supreme Court found that such language did not include a term of special parole because it was distinct from a term of imprisonment or a fine—despite the fact that special parole was expressly available for violations of the underlying offense. Petitioner notes that § 963 (the provision to which he pleaded guilty) similarly provided for "imprisonment or fine or both *which may not exceed* the maximum punishment prescribed [for the object offense]", and he argues that non-parolability is neither "imprisonment" nor a "fine" and, as such, was unauthorized.

In further support of his argument, Petitioner notes that Congress amended § 963 (the provision to which he pleaded guilty), to provide as of November 18, 1988, for the *same penalties* as those available under the substantive offense—and that until that time, neither the minimum mandatory nor non-parolable provisions of sentences available for the underlying offense applied to convictions for conspiracy.[2] Indeed, the Eleventh Circuit has determined that until the amendment in November 1988, defendants were not subject to minimum mandatory sentences for § 963 conspiracy violations. *United States v. Young*, 975 F.2d 1537 (11th Cir.1992); *United States v. Rush*, 874 F.2d 1513 (11th Cir. 1989). There are no reported decisions from the Eleventh Circuit addressing the issue of parolability for § 963 conspiracy offenses, although the decision in *Young* found that the non-parole provisions of the Anti Drug Abuse Act, effective as of October 27, 1986, were applicable for substantive offenses committed after October 27, 1986 [3] (and prior to November 1, 1987).

Petitioner's argument is enticing—easily dismissed at first by noting that Petitioner's offense was a Guidelines offense and that the concept of parole was abolished upon enactment of the Guidelines, but more compelling as one considers the principle of *Bifulco,* i.e., that sentencing courts must construe statutes and the penalties provided therein according to the rule of lenity, 447 U.S. at 387. A less than careful reading of the appellate court decisions noted above seems to support Petitioner's position. Nevertheless, his argument is flawed in one essential respect: Petitioner's conduct in September 1988 is the genesis of his sentence of incarceration and supervised release. As of November 1, 1987, parole was simply not available. The two appellate cases cited above, *Young* and *Rush,* involved conduct which occurred prior to the effective date of the Guidelines.[4] Thus, even if Petitioner's *Bifulco* argument were persuasive, the enactment of the Guidelines substantially altered the landscape of sentencing. Thus, as his sentence was imposed pursuant to the Guidelines it is irrelevant whether the statute authorized the Court to deem Petitioner ineligible for parole.

The available legislative history of the Sentencing Reform Act, at S.Rep. No. 225, 98th Cong. 1st Sess. p. 56 (1983), notes that "[t]he Parole Commission will have no jurisdiction over offenders sentenced under the guidelines sentencing system." For offenses com-

---

2. A violation of 21 U.S.C. § 952 (substantive importation) directed the Court to the penalties at 21 U.S.C. § 960. At the pertinent time, 21 U.S.C. § 960(b)(1) provided that the appropriate sentence be imposed without parole.

3. In *Young*, the Eleventh Circuit was reviewing the sentences imposed as to two counts, one conspiracy and one substantive. Although the decision does not explicitly limit its finding regarding parole eligibility to the sentence for the substantive offense under review, the Eleventh Circuit had already vacated Young's sentence as to the conspiracy sentence (due to the sentencing court's incorrect application of a mandatory minimum) and, thus, the discussion as to parole eligibility necessarily applied only to the sentence for the substantive offense.

4. The dates of the offenses are easily inferred from the text of the opinions, *Young*, 975 F.2d at 1538 ("In March 1987, [Young] and two other *individuals . . . were spotted and boarded by U.S.* Coast Guard officers.... The search revealed approximately 36, 000 pounds of marijuana."); *Rush*, 874 F.2d at 1514 ("In 1988, one year after these defendants had been sentenced . . ."—implying that the offense conduct occurred sometime before late 1987).

mitted after November 1, 1987 (or for conspiracies which continued past that date), early release through parole was no longer an element of the period of incarceration. In fact, it would pervert the purpose of the Guidelines in striving for consistency and certainty in sentencing if parole were available as to a Guidelines sentence because release dates might occur much earlier and with much greater uncertainty than intended pursuant to the Guidelines.

In sum, Petitioner's argument is interesting but to no avail. For offenses committed after November 1, 1987, there is no eligibility for parole—even if the corresponding statute fails to specifically require imposition of a non-parolable sentence. After the effective date of the Guidelines any such non-parolable conditions in the statutes would be meaningless and redundant because the Guidelines entirely abolished parole. Thus, the Magistrate's Report and Recommendation is ADOPTED to the extent that it recommends denying Petitioner's motion. Petitioner's sentence shall remain unchanged.